Caruthers, J.,
delivered the opinion of the Court.
The various bills, original, amended, supplemental, and cross, with the answers and proof, present this state of facts:
In July, 1851, a petition was presented to the County Court of Sumner, in the name of the five children of Peter H. Martin, deceased, and James Key, for the sale of a small tract of poor ridge land, on what is called “ Rogue’s Fork,” of Bledsoe’s creek, for partition. The petition states that the said James Key owned one-half of the land, and Martin’s heirs the other half. No title is exhibited, no reference to, or report by the clerk, and no next friend or guardian for the minor petitioners. But the Court decreed the sale, fixed the minimum at $1.25 per acre, and appointed Key commissioner to sell, at either private or public sale. He sold the land, 76 acres, to McLin Key, August, 1851, for $150, and made his report to the January Term, 1852, when the same was confirmed, but no decree of title.
At the time of the sale, this paper was executed by James. Key:
“ Received of McLin Key, one hundred and fifty dollars-for a certain tract or parcel of land, lying and being in Sumner county, on the waters of the “ Rogue’s Fork " of Bledn soe’s creek, this 4th of August, 1851. I sign as trustee for heirs of Peter H. Martin.”
JAMES KEY. [seal.]
McLin took possession of the land, and obtaining no title,, filed the original bill February, 1857, against James for a specific performance. An amended bill was soon after filed, bringing in the heirs of Martin, and then a supplemental bill to enjoin an action of ejectment instituted by James Key, on the 1st of June, 1858, to recover 20 or 80 acres of the same- *450 land under a deed from Calgy, made subsequent to the sale to McLin.
James Key, to relieve himself from the unfavorable aspect in -which he is presented, says, in his answer, that he employed a very respectable attorney to file the petition for the sale of the land, and that it was not read to him, and he was not aware that the petition stated that he was entitled to one-half of the land; yet, the Martins were indebted to him in matters connected with the land, more than it was worth, and he supposes the attorney knowing that fact, united liis name in tho petition. Ho does exhibit a power of attorney dated January, 1850, signed by Robert B. Martin, administrator of P. H. Martin, to “ enter upon and take possession of the land for the /heirs.” And an authority from P. II. Martin, to him, to •u rent ” the land, dated January, 1849. So it seems he was a .sort of agent for the family in relation to this land.
But lie shows no authority for filing the petition for sale. St is admitted on all hands, that ibe sale wras utterly void, and ¡-.that the title is still in Martin’s heirs, and the decree restores ..them to the possession, charging them with improvements, a.nd McLin Key with rents. To all this there can be no objection. But a question arises as to the measure of compensation to McLin. The Chancellor gave him the $150 on the sale, with interest, against James Key.
It is insisted that it should have been about $400, the advanced value of the land, because, as it is insisted, the contract of sale was unexecuted, and the case is analogous to an .action of covenant on a bond for title. If that was the case, it would certainly be so. It is not controverted that for a breach of an unexecuted contract for title, as in a bond to convey land, the measure of the damages is the value of the property at the time of the breach, 2 Meig’s Dig., 616, 721; and that in a suit upon the covenants in an executed contract, a,s a deed for land, it is the amount paid and interest upon it. 4 Hum., 99. So, if this case could be placed under these rules, the question would be, whether the contract, if any existed, was an executed one, or not. And so it would have to *451 be regarded, if valid at all, for any purpose. It is everywhere beld, that the confirmation of a report of sale completes the contract, and leaves nothing moro for the owners or vendor to do. The Court passes the legal tide. And this sale was confirmed, as has been before stated. But this need not be authoritatively decided, and is not, as it is not necessary for the disposition of the case.
But the whole proceedings, sale and all, were void. Nevertheless, James Key acted in the capacity of commissioner in making the sale, under an appointment of a court of competent jurisdiction of the matter. Without fraud, it ■would not, perhaps, be pretended that he would be liable beyond the money he received and retained, although he acted under a void authority. But if he acted fraudulently, as there is some reason to believe he did in getting up the proceeding, would his liability be different? We are not aware of any authority that would change it in this respect. The sale is a nullity, whether he acted fraudulently, or not, and the injury to the vendee is the loss of his money. There is no breach of covenant — there was none to break. The simple receipt for the money is not a covenant to convey. Where a sale is void for the want of a writing under the statute of frauds, the vendor can only be compelled to refund what he has received. Where a man without authority sells the land of another, and enters into no covenants, but receives the consideration, the measure of damages would be the money received, and interest. It is presumed, that his knowledge, or want of knowledge, that he had no title, would not change the question. The rule so laid down in Sedgwick on Damages, page 200, is applicable to executory contracts, and in cases of fraud makes the vendor liable to the value of the property. We do that without regard to fraud in that kind of contracts. But here there was no contract, and if any, it was executed by the confirmation of the report. We think the Chancellor was right on this point.
He was also right in perpetually enjoining the action of ejectment brought by James Key v. McLin Key, and directing the possession to be restored to the Martin heirs. But we *452 cannot now pass upon and settle the boundary between the Martin land, and that of Calgy, purchased by James Key. That is a proper question for a Court of Law in an action of ejectment. We do not understand the decree to touch that question, except so far as it prescribes the line to which the Martins shall be put in possession, and that, perhaps, should be omitted in the decree here. If there be any estop-pel upon James, it can be applied at law as well as here. Upon that we give no opinion now.
The decree will be affirmed, and the cause remanded for its execution.